**NOT FOR PUBLICATION** **CLOSED**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ADVANCED RESTORATION TECHNOLOGIES, INC.,<br><br>Appellant,<br><br>v.<br><br>SHORTGRASS, INC.,<br><br>Appellee. | Civil Action No.: 05 - 2978 (JLL)<br><br>**O P I N I O N & O R D E R** |
| In re:<br><br>ADVANCED RESTORATION TECHNOLOGIES, INC.,<br><br>Debtor. | Chapter 11<br><br>Case No. 04-50126 (NLW) |

**LINARES**, District Judge.

This matter comes before the Court on Appellant Advanced Restoration Technologies, Inc.'s ( "Appellant" or "Debtor") appeal from the Order of the Honorable Novalyn L. Winfield of the United States Bankruptcy Court, District of New Jersey, entered May 10, 2005, granting the motion of Appellee, Shortgrass, Inc. ("Shortgrass"), to dismiss the Chapter 11 case and denying the motion of Debtor for an order authorizing the rejection of an executory contract entered into between Debtor and Appellee. This Court has jurisdiction over the appeal pursuant to 28 U.S.C.

§ 158(a) since Judge Winfield's Order dismissing the case is a final order. The matter is resolved without oral argument.[1] For the reasons stated herein, the Bankruptcy Court's Order granting Appellees' motion to dismiss the bankruptcy case and denying Appellant's motion to reject the contract is affirmed.

**BACKGROUND**

**A. Factual Background[2]**

Debtor is an entity engaged in the development of treatments for hair loss. Geno Marcovici ("Marcovici"), is Debtor's sole officer, director and shareholder. At the time of the bankruptcy petition, Debtor had already developed a product to treat hair loss which was being marketed under the name "HairGenesis."

Debtor and Marcovici executed a marketing agreement (the "Contract") on May 16, 2003[3] with Shortgrass which gave Shortgrass certain marketing rights for ten years. (Contract, ¶ 7). The express language of the Contract licenses Shortgrass with the "exclusive right to

---

[1]After an examination of all submissions in this case and the record from the Bankruptcy Court proceedings, this Court exercises its discretion pursuant to Bankruptcy Rule 8012 and foregoes oral argument.

[2]In the reply brief, Appellant argues for the first time that the Court must strike Appellee's Designation of Record and Supplemental Appendix from the record because it was untimely under Federal Rule of Bankruptcy Procedure 8006. (Reply Br. at 2) This would effectively strike a large portion of Appellee's statement of facts. Arguments raised in the reply brief in the first instance will not be considered. Elizabethtown Water Co. v. Hartford Cas. Ins. Co., 998 F. Supp. 447, 458 (D.N.J. 1998); see also Bayer AG v. Schein Pharm., Inc., 129 F. Supp. 2d 705 (D.N.J. 2001). Further, Appellant does not allege that it is has been prejudiced in any way by such a delay. Accordingly, Appellant's reply brief will be stricken insofar as is raises arguments that Appellee's supplemental designation of record and accompanying appendix are untimely.

[3]Shortgrass executed the Contract on June 23, 2003.

manufacture, market, sell, distribute, advertise and otherwise exploit the Products" through various marketing channels. (Contract, ¶ 2). Shortgrass also received an exclusive license to the "formulas, recipes, manufacturing process and protocol of the Products." (Contract, ¶ 2). However, the Contract included a "carve-out" which excepts from the agreement any sales of HairGenesis on the already existing HairGenesis web-site and distribution of HairGenesis products through existing licensees who are wholesale resellers. (Contract, ¶ 2).

The Contract provided that Shortgrass will pay Debtor three percent (3%) of the revenue from each Product sold and three and three-quarters percent (3.75%) of the revenue from any re-order from a single customer. (Contract, ¶ 3a). However, "[a]ll technology, formula changes and improvements of any kind to the Products shall accrue to [Shortgrass] and deemed licensed to it exclusively and shall not be used to update, upgrade or modify HairGenesis or any of the products sold through the websites of or by ART or any of its customers or licensees." (Contract, ¶ 2). The parties agreed that the agreement shall be governed by and construed in accordance with Florida law. (Contract, ¶ 19). Additionally, the parties stipulated that any dispute shall be submitted to binding arbitration, with judgment upon any arbitration award to be entered in any court having appropriate jurisdiction. (Contract, ¶ 19).

Debtor filed a claim for arbitration on October 16, 2003, exactly five months after executing the Contract to have the agreement declared void. As identified by Debtor, a principal reason for voiding the Contract was that the agreement was missing "Exhibit A" which was to identify the "Product/s" identified in the Contract. (Appellant Br. at 13). This missing document, argued Debtor, prevented the existence of a meeting of the minds between the parties. (Appellant Br., p. 13). Specifically, Debtor and Marcovici alleged that the license granted to Shortgrass in

the Contract was meant to apply *only* to future products developed by Debtor and Shortgrass, not the existing HairGenesis products. Debtor also alleged that Shortgrass had materially breached the Contract. Shortgrass denied all claims and argued that the Contract's terms specifically related to the HairGenesis product as it existed at the time the parties entered into the agreement.

After three days of hearings held in June, 2004, a conference call conducted July 13, 2004 and consideration of the parties' submissions, the Arbitrator, Ben F. Overton ("Overton"), issued an opinion dated August 6, 2004 (the "Overton Opinion").

Overton determined that the Contract was enforceable as written and found "no credible evidence that establishes that this contract was written to limit its application to a new yet to be developed product or that that was the intent of the Claimants." (Overton Op., p. 5). In the opinion, Overton repeatedly notes that the evidence clearly shows that Marcovici "understood the terms of the contract and the obligations and restrictions binding [Debtor] and himself." (Overton Op. at 7). Overton concluded that the Contract was enforceable, there existed no doubt as to Debtor's and Marcovici's duties and obligations, and that the record did not demonstrate any evidence of a material breach by Shortgrass. (Overton Op. at 8-9). Most significantly, Overton determined that Debtor and Marcovici's claim that the Contract was only intended to cover a future hair restoration product merit-less. (Overton Op. at 7).

As a remedy, Overton awarded Shortgrass actual damages, attorneys fees and expenses incurred in the time period spanning from the execution of the Contract to the conclusion of the arbitration proceedings. Significantly, Overton also enjoined Debtor and Marcovici from directly

or indirectly "either with Sandy Reid or Altava[4] or with any other person or entity from interfering with Shortgrass in the marketing of the products ... under the contract," "interfering with the use of the internet web sites expressly granted to Shortgrass under the contract," and "attempting to expand the income allowed under the carve-out provision of the contract." (Overton Op. at 9).

Approximately four months after Overton rendered his opinion, Debtor filed a voluntary Chapter 11 petition in bankruptcy on December 28, 2004. Debtor states that it filed for bankruptcy after being "[f]aced with dwindling revenues, a significant imbalance between assets and liabilities, rising litigation costs and expenses incurred in pre-petition litigation, and a general inability to pay debts." (Appellant Br. at 14). Debtor claims it "had no alternative but to seek bankruptcy relief." (Appellant Br. at 14). On its schedules, Debtor identified eleven existing creditors, including Shortgrass, Altava, and its pre-petition attorneys who rendered services in conjunction with the arbitration.

On December 29, 2004, the day after filing its petition, Debtor filed an application for an order authorizing the rejection of the Contract between itself and Shortgrass.[5] On February 17,

---

[4]Significantly, Overton's Opinion also notes the introduction of a third party to this complicated factual scenario: Altava Health Products, Inc. ("Altava"). Overton states that Debtor and Marcovici "entered into a written distribution agreement on February 9, 2004 with Altava that gave it the *same rights* given Shortgrass and made the agreement retroactive to April 8, 2003." (Overton Op. at 8) (emphasis added). This purported agreement between Debtor and Altava is what prompted Overton to name Altava in the injunctive language of his Opinion.

[5]Title 11 U.S.C. § 365(a) provides: (a) Except as provided in 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor. 11 U.S.C. § 365(a). According to the statute, "rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease." 11 U.S.C. § 365(g). Neither Appellant nor Appellee dispute that the Contact constituted an executory contract for the purposes of 11 U.S.C.

2005, the bankruptcy court denied Debtor's application without prejudice for failure to submit sufficient evidence supporting rejection. On February 18, 2005, Debtor filed a renewed application for an order authorizing rejection of the Contract. On March 7, 2005, Shortgrass filed a motion to dismiss the bankruptcy petition for lack of good faith and submitted its opposition to Debtor's motion to reject the Contract. Shortgrass' motion to dismiss was ultimately opposed by both Debtor and Altava.

**B. Findings of the Bankruptcy Court**

The Honorable Novalyn L. Winfield conducted a hearing on the motions on May 2, 2005 and issued her determination at the conclusion of the hearing. ("May 2 Hearing"). Judge Winfield granted Shortgrass' motion to dismiss the petition, denied Debtor's motion for authority to reject the Contract[6] and granted a stay of the court's rulings pending appeal. Debtor appeals Judge Winfield's orders with respect to Shortgrass' motion to dismiss and its own motion to reject the Contract.

During the May 2 Hearing, Judge Winfield heard argument from counsel for Debtor, Altava (opposing Shortgrass' motion to dismiss) and Shortgrass. At its conclusion, Judge Winfield ultimately held that Debtor's case should be dismissed as a bad faith filing. Judge Winfield based her determination on the following findings: that the situation truly involved a

---

§ 365(a). The parties do dispute however, whether the Contract involved "intellectual property" as used within the Bankruptcy Code's rejection exception contained in 11 U.S.C. § 365(n). In the case of an executory contract "under which the debtor is a licensor of a right to intellectual property," rejection is still available, but the licensee may elect "to retain its rights ... under such contract ... to such intellectual property ... as such rights existed immediately before the case commenced." 11 U.S.C. § 365(n)(1) - (n)(1)(A).

[6]Judge Winfield indicated that had she not dismissed the bankruptcy case, she would have denied Debtor's application to reject the Contract.

two-party dispute between Shortgrass and Debtor, that Debtor lacked operational debts and that Debtor's apparent purpose in filing for bankruptcy was to undo the effect of the arbitration decision. (May 2 Tr. at 57-58). Judge Winfield continued on to state that despite the dismissal of the case, were the Court to consider the motion to reject, it would deny that as well since rejection would fail to provide a benefit to the bankruptcy estate. (May 2 Tr. at 58-60). Finally, Judge Winfield granted Debtor's oral application for a stay of these rulings pending appeal. (May 2 Tr. at 73).

## DISCUSSION

In its Notice of Appeal, Appellant designates four issues which it appeals: (1) whether the bankruptcy court erred in finding that Appellant filed its bankruptcy petition in bad faith; (2) whether the bankruptcy court erred in finding that Appellant's executory contract with Shortgrass involves "intellectual property" as defined under the Bankruptcy Code; (3) whether the bankruptcy court erred in finding that, in the event that the executory contract was rejected, Shortgrass would still have the rights to intellectual property developed post-petition; and (4) whether the bankruptcy court erred in finding that Appellant, in seeking to reject the contract, did not demonstrate good business judgment. (Notice of Appeal, p. 5).

### A. Standard of Review

This Court employs an abuse of discretion standard when reviewing exercises of discretion by the Bankruptcy Court. In re Continental Airlines, 203 F.3d 203, 208 (3d Cir. 2000). The Third Circuit has determined that a bankruptcy court's dismissal of a petition for lack of good faith is an exercise of discretion subject to review for an abuse of discretion. In re Integrated Telecom Express, Inc., 384 F.3d 108, 118 (3d Cir. 2004) (citing Solow v. PPI Enters.

(U.S.), Inc. (In re PPI Enters. (U.S.) Inc.), 324 F.3d 197, 211 (3d Cir. 2003)). "[A]n abuse of discretion exists where the [bankruptcy court's] decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact." In re SGL Carbon Corp., 200 F.3d 154, 159 (3d Cir. 1999) (citation omitted). Upon review, an abuse of discretion will be found if the bankruptcy judge acted in an irrational, arbitrary or capricious manner "clearly contrary to reason and not justified by the evidence." Vizzini v. Ford Motor Co., 569 F.2d 754, 760 (3d Cir. 1977).

**B. Analysis**

Since the bankruptcy court granted Appellee's motion to dismiss Appellant's Chapter 11 case without reaching the merits of Debtor's motion to reject the executory contract, this Court thus deems it necessary to resolve whether Judge Winfield erred in dismissing the case before reaching the remaining three issues that Appellant has raised on appeal.

**1. Dismissal of Debtor's Chapter 11 Petition**

Pursuant to 11 U.S.C. § 1112(b)(1), a party in interest to a bankruptcy proceeding may move to dismiss a Chapter 11 petition for "cause." Id. The statute sets forth specific examples of "cause" which do not define "cause" nor comprise an exhaustive list. In re Shar, 253 B.R. 621, 628 (D.N.J. 1999). Further, a bankruptcy court may "consider other factors as they arise, and [may] use its equitable powers to reach an appropriate result in individual cases." In re Ravick Corp., 106 B.R. 834, 842 (D.N.J. 1989) (quoting H.R.Rep. No. 595, 95th Cong., 1st Sess. 405-06 (1977)). "It is well established that a debtor's bad faith filing of a bankruptcy petition is sufficient 'cause' to warrant dismissal of the case under § 1112(b). In re Ravick Corp., 106 B.R. at 842. When a debtor opposes a creditor's motion to dismiss, the burden of demonstrating "cause" lies

with the creditor. In re Shar, 253 B.R. at 628 (citation omitted). However, even if cause exists, the court shall not dismiss a case if circumstances exist which demonstrate that the dismissal is not in the best interests of creditors and the estate. 11 U.S.C. § 1112(b)(1).

There is a general presumption that debtors file petitions for reorganizations in good faith. In re Shar, 253 B.R. at 628. In determining the existence of bad faith, "the facts and circumstances of a particular case must be examined and no one factor should be controlling."[7] In re Shar, 253 B.R. at 630 (quoting In re Ravick, 106 B.R. at 843). Shortgrass, in its motion to dismiss the petition, argued that Debtor's petition was filed in bad faith because: (1) Debtor filed its petition to obtain "tactical litigation advantages" for itself and Altava in an effort to reject the Contract and escape its duties and obligations under the agreement; (2) the Debtor's case is essentially a two-party dispute between Shortgrass and Debtor; (3) the case merely attempts to distribute rights from a party in bankruptcy (Shortgrass) to one outside (Altava); (4) Debtor has unclean hands; (5) Debtor cannot show that its petition was filed in good faith; and (6) the bankruptcy was filed to reject the Contract, but even rejection would not provide benefit to the estate. (Shortgrass Mot. to Dismiss at 2-3).

Two of the basic purposes of Chapter 11 are to preserve going concerns and maximize

---

[7]In In re Y.J. Sons & Co., Inc., 212 B.R. 793, 802 (D.N.J. 1997), the court set forth certain factors which other courts had recognized as evidence of bad faith filing: (i) The Debtor has only one asset, the Property, in which it does not hold legal title; (ii) The Debtor has few unsecured creditors whose claims are small in relation to the claims of the Secured Creditors; (iii) The Debtor has few employees; (iv) The Property is the subject of a foreclosure action as a result of arrearages on the debt; (v) The Debtor's financial problems involve essentially a dispute between the Debtor and the secured creditors which can be resolved in the State Court Action; and (vi) The timing of the Debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the Debtor's secured creditor to enforce their rights. Id. (citing Phoenix Piccadilly Ltd., 849 F.2d 1393, 1394-95 (11th Cir. 1988)).

property available to satisfy creditors. In re Integrated, 384 F.3d at 119 (quoting Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship, 526 U.S. 434, 453 (1999). As noted by the Third Circuit, courts have identified two inquiries which are "particularly relevant to the question of good faith: (1) whether the petition serves a valid bankruptcy purpose, *e.g.*, by preserving a going concern or maximizing the value of the debtor's estate, and (2) whether the petition is filed merely to obtain a tactical litigation advantage." In re Integrated, 384 F.3d at 119-120 (citing SGL Carbon, 200 F.3d at 165). When a petitioner's aims lie outside the aims of the Bankruptcy Code, the exercise of the powers available to Debtors under Chapter 11 is unjustified. In re Integrated, 384 F.3d at 120. "To be filed in good faith, a petition must do more than merely invoke some distributional mechanism in the Bankruptcy Code. It must seek to create or preserve some value that would otherwise be lost- not merely distributed to a different stakeholder - outside of bankruptcy." In re Integrated, 384 F.3d at 129.

Debtor argues that it did not possess a bad faith motivation in filing its petition for Chapter 11. Although Debtor admits that one of its purposes in filing for bankruptcy was to reject the Contract entered into between Debtor and Shortgrass, Debtor argues that this alone does not constitute evidence of bad faith. Debtor argues that rejection of the Contract under 11 U.S.C. § 365 will enable Debtor to develop new products going forward and allow Debtor to better utilize its current internet outlets for sales of hair restoration products by eliminating "confusion" in the marketplace. (May 2 Tr. at 4-9). Debtor admits that the injunctive effects of the arbitrator's decision will continue, but argues that Debtor will nevertheless be able to generate new revenues sufficient to re-establish financial stability. (May 2 Tr. at 10). Debtor also points to its eleven creditors as evidence that the case is not actually a two-party dispute. Finally, Debtor argues that

the arbitrator's findings may not be given preclusive effect because they do not constitute a final judgment and did not reach the issue of whether Debtor acted in bad faith.

In response, Shortgrass alleges that since the existing hair restoration products and accompanying intellectual property rights were Debtor's only asset, since Debtor has no plant, no property, no equipment, no employees, and no shareholders besides Marcovici, the only effect that filing for Chapter 11 could have would be to undermine the existing Contract with Shortgrass. (May 2 Tr. at 53). Shortgrass argues that due to the exclusive ten-year license Debtor granted to Shortgrass, there is nothing left to re-organize under the Bankruptcy Code since the arbitrator determined that Shortgrass is the sole license-holder for the products already existing, and the language of the Contract extends the license to future-developed products.

During the hearing and in the Opinion, the Bankruptcy Court noted the similarities that existed between the decision rendered in In re Ravick and the case initiated by Debtor. (May 2 Tr. at 56) ("I think, frankly, of all the cases anybody cited, [In re Ravick is] the most on point case.") In In re Ravick, Chief Bankruptcy Judge Rosemary Gambardella granted a party in interest's motion to dismiss the debtor real estate corporation's Chapter 11 case for bad faith. 106 B.R. at 851. The In re Ravick Court concluded that the debtor was attempting to improperly use the bankruptcy system as a means of renegotiating its contract with the movant. Id. at 849. Although the debtor had listed several creditors on its schedules, Judge Gambardella determined that the case involved essentially a dispute between two parties: the debtor and the moving creditor. Id. at 850. The Court noted that "[t]he very essence of a determination of good faith in the context of a motion to dismiss is the cumulative impact of the particular facts of a case." Id. at 850. In this vein, the Court found significant the debtor's clear intent of the debtor to avoid

liability on the contract in issue, the timing of the petition's filing, and the principal's position as "sole employee, officer and shareholder" of the debtor. Id.

Upon careful review of the May 2 Transcript and accompanying opinion of the Bankruptcy Court, this Court is unable to determine that Judge Winfield abused her discretion by dismissing Debtor's Chapter 11 petition. To reiterate, "an abuse of discretion exists where the [bankruptcy court's] decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact." In re SGL Carbon, 200 F.3d at 159. Debtor fails to point the Court to any such finding of fact, conclusion of law or application of law to fact. Further, the Court, upon its own review, finds no such instance.

Judge Winfield identified the following bases in support of the Court's grant of Shortgrass' motion: (1) that the bankruptcy proceeding is more truly a two-party dispute between Debtor and Shortgrass; (2) Debtor's intent behind filing for bankruptcy appears to be to avoid the effect of the binding arbitration Debtor had initiated in Florida; (3) Debtor had a prior bankruptcy filing where it sought to reject a similar licensing agreement; and (4) the fact that the existing creditors' claims all relate in some fashion to the underlying arbitration and do not constitute operational debts of Debtor. (May 2 Tr. at 56-58). Judge Winfield concluded that "the real bankruptcy purpose here was ... to undo the effect of the ... arbitration decision in the state court." (May 2 Tr. at 58). Judge Winfield also stated that the Court did not find the Debtor's hope of being able to generate revenue post-rejection of the Contract a sufficient reason to find that the filing was made in good faith. (May 2 Tr. at 58).

None of these factual findings appear clearly erroneous as required for this Court to reverse the determination of the Bankruptcy Court. Rather, they seem well-supported by the

record and by the arguments offered by the parties during the May 2 Hearing and in their submissions to the court. Although Debtor lists eleven separate creditors on the schedules submitted in conjunction with its Chapter 11 petition, Judge Winfield correctly noted that of the financially significant claims, one belonging to a Florida law firm, was a direct result of Debtor's involvement in the arbitration proceedings (which it itself initiated). Another significant claim is held by Shortgrass and the third is held by Altava, a party who stands to financially benefit if the bankruptcy court were to allow Debtor to reject the Contract with Shortgrass. Thus, Judge Winfield's conclusion that the Chapter 11 case involved essentially two parties does not appear clearly erroneous.

Next, Judge Winfield concluded that Debtor's intent in filing for bankruptcy hinged upon its desire to avoid the results of the pre-petition arbitration conducted in Florida. Debtor argues however, that rejection of the Contract through bankruptcy would not negate the effect of the arbitration because Debtor has a pre-existing arrangement with Altava to market its products that is not supplanted by the Contract with Shortgrass. However, the arbitrator expressed doubt as to the validity of this purported agreement and Judge Winfield correctly notes that the ability of Debtor to utilize the "carve-out" to make any real profit is limited in light of Shortgrass' continuing license on the products. (May 2 Tr. at 57). Judge Winfield noted that subsequent to arbitration, Debtor filed several state court and federal court actions against Shortgrass involving the subject matter of the arbitration which were unsuccessful in their aims.

This Court concludes that Judge Winfield's determination with respect to Debtor's bankruptcy purpose was not clearly erroneous. Following the arbitration, Debtor instituted further litigation regarding the Contract and the injunctive relief awarded in arbitration. This presumably

indicates Debtor's intent to escape the effect of the arbitration. Further, Debtor appears to have boxed itself into a legal corner. Debtor instituted arbitration on the grounds that the Contract's terms were limited to post-Contract products only. Then, once Overton determined that the subject matter of the Contract included HairGenesis (a pre-Contract product), Debtor now comes to the Bankruptcy Court proceeding on the argument that the Contract is limited to *pre-Contract* and *pre-petition* products only. This case does not involve a typical rejection scenario. Rather, it appears to this Court that Debtor, in seeking to reject the Contract, which awarded a ten-year license on Debtor's primary assets to Shortgrass, is actually seeking to avoid the effects of the arbitration and is using bankruptcy as a litigation tactic. Thus, this Court is unable to conclude that Judge Winfield's finding with respect to Debtor's intent is clearly erroneous.

Judge Winfield also considered Debtor's prior bankruptcy filing as part of the Court's bad faith analysis. Shortgrass attempted to characterize Debtor as a "serial filer" but Judge Winfield reminded Shortgrass that Debtor had filed for Chapter 11 bankruptcy only once before. (May 2 Tr. at 22). However, Judge Winfeld did find relevant the fact that the previous bankruptcy had involved a similar contractual agreement which the Debtor then had sought to reject as well. (May 2 Tr. at 22; 56-57). In its submissions to this Court, Debtor argues that one prior filing does not a serial filer make. This Court agrees. However, when as here, the prior filing concluded less than three years earlier, was before the same Judge, and Debtor successfully rejected a contractual license agreement similar to one in this case, this Court cannot conclude that Judge Winfield's decision to consider Debtor's past bankruptcy as relevant to her analysis was clearly erroneous.

Finally, Judge Winfield cited Debtor's lack of operational debts in support of the Court's

determination. Debtor opposes this determination and points to its eleven creditors as evidence that the company was operating, incurring debts and intended to operate post-rejection and post-reorganization. However, as previously noted, these eleven unsecured creditors do not specifically relate to the *operating* debts of Debtor. Rather, two of the claims stem from the arbitration (Debtor's attorneys and Shortgrass) and the largest claim belongs to Altava and stems from an agreement of questioned legitimacy and effect. With these facts set forth in the record, Judge Winfield was not clearly erroneous in reaching the conclusion that Debtor lacked operational debts.

Having concluded that Judge Winfield made no factual determination which was clearly erroneous, this Court must next examine whether the Judge improperly applied the law to these facts. See In re SGL Carbon Corp., 200 F.3d at 159. It is well-established that when a court determines whether a debtor has filed a petition in bad faith, the court must examine "the facts and circumstances of a particular case" without letting any one factor control. In re Shar, 253 B.R. at 630 (citation omitted). This Court finds that the Bankruptcy Court clearly engaged in this process. Throughout the May 2 Hearing, Judge Winfield questioned the parties on each factual basis cited in her conclusion. Furthermore, the Bankruptcy Court clearly did not rely on only one factor in reaching its determination and instead investigated and relied upon several. Accordingly, this Court determines that there was no improper application of the law to the facts. For the foregoing reasons, this Court will affirm the decision of the Bankruptcy Court granting Shortgrass' motion to dismiss. Appellant's appeal is hereby dismissed.

### 2. Denial of Application to Reject Contract

In the notice of appeal, Appellant requests this Court to review the Bankruptcy Court's

order denying Debtor's motion to reject the Contract. However, since this Court affirms the dismissal of Debtor's Chapter 11 case, the Court will decline to reach the merits of Debtor's motion to reject and related appeal. Accordingly, this portion of the appeal is dismissed.

## CONCLUSION

For the foregoing reasons set forth above, it is on this 30th day of March, 2006,

**ORDERED** that Judge Winfield's May 10, 2005 Order granting Appellee Shortgrass' motion to dismiss Appellant's bankruptcy case is AFFIRMED; and it is further

**ORDERED** that Appellant Advanced Restoration Technologies, Inc.'s appeal of the September 28, 2004 Order is hereby DISMISSED.

This case is **CLOSED**.

DATED: March 30, 2006

/s/ Jose L. Linares
United States District Judge